2008-5013 D. Bazan v. Health and Human Services Ms. Perlman, good morning to you. Welcome. Good morning. Thank you very much. Please proceed. Thank you. May it please the Court, my name is Heather Perlman and I represent the government. There is no dispute regarding the core set of factual findings made by the special master in this case. They are straightforward and they are sympathetic. There is also no dispute that the petitioner in this case, Adela Quintana de Bazan, suffers from a condition called acute disseminated encephalomyelitis or ADEM for short. Does the outcome in this case basically turn on what the standard of review is for us or for the Court of Federal Claims? The Court of Federal Claims reviewed the legal standard that the special master used and decided that there was legal error. But how does the Court of Federal Claims, what does it do? Does it review it de novo or does it review it for substantial evidence? It reviews it in not in accordance with law standard. Pardon? Not in accordance with the law standard. But what does that mean? Is that de novo? In other words, what I'm trying to find out is to what extent is the Court of Federal Claims required to accede to the special master's evaluation of the comparative reliability of the experts? Well, the reliability of the experts we believe is a factual issue. The special master found, as I remember it, that the plaintiff's witness, the expert, was less credible than the governor's witness. Not entirely, although that was a part of his finding. He found that Petitioner did not put forth preponderant evidence that the onset of her condition occurred. Wasn't that so because one of the essential elements of that was the relative credibility of the two experts? It was certainly a consideration, but it wasn't just the two experts or respondent's expert. It was the Petitioner's expert did not provide a basis for her argument that 11 hours is an appropriate onset period. But there were some portions of the record that addressed that. They said it was a re-challenge case with this, the fifth administration of tetanus, and that prompts early onset in many instances. They also said that there's an analogous disease, similarly rare, where it has a rapid onset. So there were at least those two items in the record. Well, we believe neither of those items helps Petitioner to meet her burden. Regarding the five or six alleged previous tetanus vaccinations. Why don't they? Why isn't that evidence? Because Petitioner did not prove that either of them rose to preponderant evidence. She did not prove that the peripheral demyelinating diseases on which she relied were analogous. She said they were analogous, but as our expert and as the literature indicated, they are not analogous. The myelin in the peripheral nervous system is structurally different, chemically different, than central nervous system myelin. So while there are similarities and they might have the same immunopathogenesis. So your argument is that the facts were found by the special master and should not have been disturbed by the Court of Federal Claims. That is correct. Does the Court of Federal Claims have fact-finding authority in this area? He does if there was legal error. We believe there was no legal error, therefore he had no authority to insert his own findings of fact. But the Court found legal error in that the Court said that the special master had applied the wrong burden of proof. Correct. And then that was the opening for him, for the judge then to say, well, under the proper burden of proof, the facts are not as he had found them. That is correct. The statute allows for him to insert his own findings of fact if legal error occurred. It's our contention. I'm sorry. If legal error occurred, why isn't a misreading of the facts in the opinion of the Court of Federal Claims judge a legal error? Well, we believe that his findings of fact were arbitrary and capricious. Again, the reading of the facts in the opinion of the judges. Sorry, the judges. The judges. But we don't even get there if the first step is to look to see whether or not legal error was in fact committed by the special master. We believe it was not. Petitioner had a burden to prove a prima facie case for causation, which included establishing by preponderant evidence that her condition came about in a medically appropriate time frame. Not a literal time frame, which 11 hours certainly is, but a medically appropriate time frame. And they did not provide ponderant evidence, according to the special master, that 11 hours is an appropriate time frame. They did not meet their prima facie case. Therefore, there was no legal error. I'm trying to understand why the Court of Federal Claims judge cannot review the application of the preponderance standard and reach a different conclusion. In my conclusion, there is a preponderance of evidence. There is a preponderance of evidence that Petitioner met her prima facie case? Yes. Which is what the judge said. He said that Petitioner was given an extra burden. He, being the judge of the Court of Federal Claims, said Petitioner was given an extra burden, that she had to disprove causation, disprove alternative causes. Alternative causation was not an issue in this case. It was purely whether or not she had met her burden of establishing that the vaccine caused, in fact, her injury. If the vaccine didn't cause it, something else did. That's just common sense. But it is not the government's responsibility or burden to, at this point, establish that it was some other agent. Does the Court of Federal Claims employ the same standard of review in reviewing decisions of the special master that we employ when we review a decision of the Court of Federal Claims? Let's suppose it's a breach of contract action. It's decided and we review it for factual issues, legal issues. Is it the same standard or is it a different standard? No, your review of the legal determination is de novo. You are to look at the legal determinations that were made. But the factual determinations, we review them to see whether there was substantial evidence to support those decisions. Well, the- That's in reviewing the Court of Federal Claims decision. Correct. But as long as the special master considered the relevant evidence in the record and drew plausible inferences and articulated a rational basis for his decision, it's hard to find reversible error. Maybe two people could come to different conclusions. But the special master, as the fact finder, is given great deference in this area in his findings of facts so long as he was able to substantiate them, which we believe the special master did. Are you talking about great deference by us or great deference by the judge of the Court of Federal Claims? We believe both, but in Hines, the Court of Federal Claims said straight out that the special master's credibility determinations are according to great deference. But isn't Judge Rader correct, and I thought you agreed before, that if the Court of Federal Claims judge, reviewing a master decision, finds a legal error, that he can then go on to refine the facts using the correct legal standard? Yes. Did you agree with that or not? Yes, although I would say that the facts which he should find have to have some basis of reliability, and we don't believe the facts that the judge— I don't understand facts having some basis of reliability. I thought you were going to say as long as the facts he finds must have support in the record, which is, I don't think, the same standard, is it? No, but I don't believe that the facts he found have either, actually. The five or six tetanus shots that Judge Rader alluded to earlier doesn't appear in the record. In fact, we had a fact hearing, and we had witnesses testify, the husband saying it's possible she had a vaccine 10 or 11 years prior. There was the medical records that said there was one vaccine, tetanus vaccine, 10 or 11 years prior. The daughter said, I don't know. And there was some doctor who submitted a statement saying, I know about third world countries. This woman is originally from Peru, and neonatal tetanus is an issue there. Therefore, she must have received several vaccines. And the judge at the Court of Federal Claims made that a finding of fact, even though it was not supported anywhere in the record. Am I correct that the finding of fact review standard is arbitrary and capricious? That is correct. That's very strange, isn't it, to have that kind of a fact-finding standard of review? I mean, usually it's clear error or substantial evidence. Arbitrary and capricious is usually reserved for discretionary findings. But that is. And you're saying essentially there's no capriciousness in what the special master did? Nor was it arbitrary. But now Judge Letko, looking back, he says there's an error. There's a legal standard. There's a legal mistake. Yes. He says they shifted the burden. That is what he says. We do not agree with it. We do not believe that there was a burden shift. We believe that Petitioner never met her prima facie case. However, we should note that the basis for his decision was the Pafford decision by the Court of Federal Claims, which was pending with this court at that time. He noted in a footnote, he, again, being Judge Letko, noted that he did not agree with Pafford. And if Pafford was eventually found to be correct, that this decision would come out differently. So he did rely on Pafford. Even though we don't believe it's applicable, we believe that Petitioner never met her prima facie case. There was no burden shifting that occurred. Proof of a medically appropriate temple proximity is a key element of Petitioner's affirmative case. In a causation, in fact, case such as this, it is always Petitioner's burden to establish each of the elements required. That doesn't seem disputed by anybody. Well, what is disputed is whether or not the judge properly found, or the special master properly found, that onset of her condition occurred within a medically appropriate time frame. Well, there's no doubt about when the onset occurred. So the only issue, really, is what is the medically appropriate time frame. From the moment of the inoculation onward, when is the window of time that it's medically plausible that the shot caused the disease? Well, respondents expert, Dr. Sriram, actually went through exactly what has to happen in a demyelinating process, which this is. It's not a generic neurologic injury. It is a process. So a vaccine is given. The antigens are transported to the lymph nodes. Proteins from the antigen are chopped up, presented to the lymphocytes. The lymphocytes then have to divide. They proliferate. And according to the evidence that was presented, unlike bacteria, which divide every 30 minutes, lymphocytes take up to a day or two to divide. And they have to keep dividing so that there is enough of them to traverse the immune system, go to the brain, go through the blood-brain barrier, and that's when the demyelinating process actually begins. Is it a fair statement that your witness stated that it was a medical impossibility that this condition could develop after only 11 hours? That is correct, although the special master didn't frame that in quite that way. He said that petitioner did not provide preponderant evidence that her timeframe, the 11 hours that are the facts of this case, was a medically appropriate timeframe. But certainly our witness, having gone through this and being the head of the MS clinic, the multiple sclerosis clinic at Vanderbilt, who works with this day in and day out, said it is not possible. He gave a date of about two weeks? He said 10 to 14 days. Ten days. He did say, you know, it could be longer. So the issue here is 10 days versus half a day. Precisely. He did say it could be a little shorter, it could be a little longer, it depends on a variety of factors, but it would never be as short as 11 hours. And there was no evidence, not even anecdotal evidence from petitioner, that it has ever happened, a central nervous system demyelinating disease, within 11 hours. There was no preponderant evidence provided. They tried to analogize by showing that diseases of the peripheral nervous system might happen. What were the timeframes there, shortest timeframe there? The shortest timeframe was, let me tell you, it's hard to say, because some of the things that they point out were not necessarily demyelinating diseases. And as I said, certain neurologic conditions can come on within hours. Demyelination cannot. The reports that were cited to were mostly from the 1970s and did not have the specific information. Let's hear from the other side, and then you'll have some rebuttal. Thank you. Thank you. Mr. Lomhoff, good morning to you, welcome. Thank you, Your Honor. The 10 to 14 days is a good place to begin, where we left off a minute ago. Dr. Sriram certainly did say that it takes the government's expert 10 to 14 days for this type of condition to develop. And on that basis, the special master decided that the petitioner had not made a prima facie case. That's exactly the point. The special master, legal error, collapsed the respondent's burden to show another cause. They have to have evidence of onset, right? Correct. And if he found that their evidence of onset was not medically sustainable, then they had no evidence of onset. They failed to meet their burden. Isn't that entirely accurate? As far as it goes, the problem is that's not really what the special master found. The special master said as much, but if you actually look at the decision, the reason for that finding was the evidence of the government. The evidence of the government showing, by necessary logical extension of what Dr. Sriram, the government's expert, said, there must have been another cause. That is, if it takes 10 to 14 days for this disease process to occur, then something else must have caused my client's illness. The point is, though, that this is really a medical, factual determination, isn't it? Yes. One that should be made by the judicial officer, in this case the special master, who takes all of that evidence and makes the assessment. It should only be overturned, evidently, if there's an arbitrary and capricious and credibly grievous error by that fact finder. How can we say that grievous error occurred in this case? Because the grievous error, and it was an arbitrary and capricious grievous error, but that's not the basis for our appeal to the court of claims. Well, actually, no, that was the basis of our appeal in the court of claims, but it hasn't been briefed here. But to answer your question, the answer is you get there because the result here is based on legal error. The special master, if he had followed the correct standard, would not have made that factual finding. If he had not made legal error, the legal error pointed out by Judge Leto. Well, you had to help me there. I couldn't follow that at all. I didn't see that there was any legal ruling by the special master. There were only factual rulings. And so how can there be a legal error if we just have a fact finder assessing testimony in light of some contrary testimony on the issue of his 11 hours too soon? But because you have to look at what the fact finder did. Can you show us the legal error? I've got Special Master Bell's opinion right here. Show me where I can read the legal error. Because I'm like the chief judge. I only read facts, facts, facts, facts, facts. Sure. One place you'll find it, I think, is at the appendix, page 32, page 6 of the special master's decision, where he doesn't really deal with facts. What he deals with there on page 6, page 32, is a quotation from Althen, where it's the paragraph just above the word discussion in the middle of the page there. I see it. The quotation ends with, and the elimination of other causes, quoting from the Althen decision. And then there's a footnote, footnote 5 at the bottom, referencing Paffert. The context of that is that the special master is assuming there that elimination of other causes is part of what he has to decide. Because he's not, as Judge Leteau pointed out, he's not looking at the shifting. In fact, he doesn't discuss burdens of proof at all. He's not looking at the fact that elimination of other causes under the statute, subpart B, is actually the government's burden, not the petitioner's burden. I'm not following you at all. You've got to help me here. Much better than that. Yeah, I read this opinion as only making factual findings that there was no onset evidence. Medically credible onset evidence. Based on collapsing the two standards. That's what you're saying, but the question is, is that really what happened, or is that not really what happened? That's really what happened, and here's why. If you eliminate the reliance on the respondents, the government's expert... No, no, no, wait a minute. We don't have to eliminate evidence offered by one side that tends to negate the force of the evidence offered by the plaintiff. That happens in almost every trial. Because almost always the defendant puts in some contrary evidence intended to undermine the strength of the evidence put in by the plaintiff. There's nothing wrong with that. That has nothing to do with shifting burdens or requiring proof of other possible causes. All the master seemed to do was to say, well, I think her evidence is pretty weak. She didn't have any cases of 11 hours. The shortest time frame she had weren't this disease, but a different kind of disease. And even as weak as it was, it was further weakened by the contrary evidence from the government's expert. Now, I don't see there's any problem with that at all. That's what fact finders do in every case. I think the problem is what Judge Leto explained about the confusion. Yeah, but I can't find in what the master said the sort of error that Judge Leto described. You have to help us see it there. Can I read you a passage right at the end of the opinion? Yes, please. Finding that the timing of onset was not medically appropriate, the court reaches no decision as to whether it can cause ADM. The point is that the timing of onset evidence was not medically appropriate. That's the finding. It's a clear factual finding that they didn't meet the burden of showing onset. That is the finding. And that finding, I submit, is based on just before the discussion of the facts where the special master discusses the law on page 6 of his opinion. And he is misinterpreting, misreading the law at that point. At what point? Where is he misreading the law? He's misinterpreting the law. Why? Because he seems to be, he appears to be... You can't go about saying he seems to because if your claim is he's misinterpreting the law, it has to be something more than he seems to be saying. It has to be he's doing something. What he's doing in setting up his legal standards on which he's going to make his factual findings is quoting and the elimination of other causes. In the middle of page 6 of his opinion. Without explaining, without observing, that's the other side's fault. Let me read from your brief. Yes. It's now clear that petitioner's prima facie case, your case, may include proof that there was no alternative cause. Yes. When one of the three often elements is missing. Correct. That's exactly what happened in this case. The special master found one of the three elements was missing, the onset, and then went on to say, under Walter and Pafford, you could maybe overcome that failure to meet one of the three elements if you could show there was no alternative cause, but that's not there either. And that's just exactly what your brief tells us. Right. So I'm still, the basic point is there's no finding, there's no onset, medically appropriate onset evidence, and everything flows from that. If you accept the government's testimony as part of what the judge will consider in determining whether we have made a prima facie case, the difference between our situation in Pafford, which we're referring to there, is in Pafford, the evidence of... Well, doesn't the government get a chance to rebut your prima facie case? Yes, and they had it. And they had it, and it won. Not on remand. On remand from Judge Leto. Oh, of course. Well, Judge Leto told him he couldn't consider that evidence on remand. The point is when the special master made the decision based on all of the evidence, he found there was a failure of proof. And I'm struggling to find how the Court of Federal Claims could have considered that arbitrary and capricious. Or that there's an error of law. Either one. We've talked for a few minutes about the error of law. I'd like to address the arbitrary and capricious, but we haven't addressed it. I think the Daubert arguments help there. The government's attorney, based his opinion originally on clear, sloppy errors in reading the medical record, committed himself to a position and carried it through. Who? Did I say attorney? I'm sorry. Government's expert. Government's medical expert. I think I did say attorney mistakenly. The government's medical expert committed himself to clear, sloppy errors in reading the record. He mistakenly read a record of a strep throat test that my client had a year before the vaccination as having occurred the same day as the vaccination. Then he went on to misread some findings about liver function inflammation, which if he had read the record carefully, first he would have found that he was wrong that my client had a strep throat that day. I have something that's not clear to me. Are you contending that in determining whether the plaintiff had established a prima facie case, the special master could not even consider the testimony of the government's expert? Is that your position? He cannot consider it until he determines if the plaintiff has established a prima facie case. Then it's up to the government to rebut. My question to you is whether in making the determination whether the plaintiff has put in a prima facie case, you say that he could only base that on the plaintiff's evidence and could not even consider the testimony of the government's expert? I believe that's correct, yes. Where do you get that? What cases suggest that? From the nature of the prima facie case as explained by Judge Leto. You look at the evidence that the petitioner presents, you see if it makes the case, and then you look at the respondent's evidence. The evidence put in by the plaintiff who has the burden of proof. So it's just flat wrong. It can't possibly be correct. This is not a bifurcated trial where first you try the plaintiff's evidence, and then you make a special finding about whether a prima facie case is made out, and then you have phase two of the trial where the government has a burden. That's not the way it works. I can understand your argument if what happens is when the plaintiff says, the plaintiff rests, the defendant gets up and says, your honor, we move to dismiss the case because they haven't established it. That's not this case. This is a case where all the record, all the evidence is considered, and the special master concluded that on balance, considering all the evidence, including the relative credibility of the two experts, that the plaintiff had not established a prima facie case. That's what he's done. And again, he can only get there, I'm sorry to repeat myself, by collapsing the two burdens into one. That's where I don't follow you. I don't see any collapsing here. I don't understand that. I don't understand when Judge Leto says it's tatamount to shifting the burden. Maybe we should go a step beyond that and look at why he says that. He says that so because necessarily, in effect, what that means is that you're requiring the petitioner to show that there is no alternative cause. No, you're not requiring the petitioner to do any such thing. You're requiring the petitioner to show strong enough evidence that 11 hours isn't too soon. He put in some evidence. It wasn't very strong. The master said it wasn't strong enough. And it was undermined by the government's expert. I don't see any collapsing. I don't see any tatamount of anything to anything else. I think the way Judge Leto gets there is by saying, if you consider the government's expert testimony in this case, you're necessarily requiring the plaintiff to show that there is no other cause. Not true. Not true. That would only be true if the government's evidence was only relevant to proving a specific alternative causation. But the same evidence that the government might depend on, if it needed to, for showing a specific alternative causation may also, and in this case did, undermine the plaintiff's evidence that 11 hours is not too short. I think the key to what you just said is specific alternative cause. The government's expert's analysis required showing no alternative cause. Or to put it another way, the government's expert was saying there was some alternative cause, although we can't say what it is. But that is the finding, which is not permitted under Pafford and Walter. All right. I think we have your case in mind, and we'll have to wrestle with it. Mr. Perlman, we'll give you two minutes for rebuttal. Thank you. Thank you, Mr. Longhorn. Thank you, Your Honor. It was very good to hear the panel questioning about whether or not a respondent can provide evidence in terms of Special Master eventually determining whether or not a prima facie case has been met. It would be an untenable position if we were not allowed to provide such evidence because we are obliged under the statute to help make a full record for the Special Master to consider. We believe that the evidence that was provided by the government's expert, as well as the literature he submitted, just helped the Special Master to determine whether or not the prima facie case had been met. The other issue I'd like to address is there was some illusion that there was a rebuttal case that occurred, and the government provided rebuttal evidence in the rebuttal case. We do not believe that actually happened here. Providing evidence, again, it does not mean that a burden has shifted to the government to disprove or to prove that the vaccine was not the cause and that some other cause was. In fact, it is petitioner's burden to prove their prima facie case. We do not believe that they did. We request that the Court of Federal Claims decision be reversed and the decision of the Special Master dismissing the petition be reinstated. Thank you very much for your time. We have both sides' cases well in mind. Thank you very much. We'll take the matter under advisement. Thank you. All rise. This audit report is adjourned tomorrow morning at 10 o'clock a.m. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.